[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
The determination of the custodial placement of the parties' two minor children was referred to the Regional Family Trial Docket (RFTD).
Their marriage was dissolved before the RFTD (Judge Steinberg) on November 1, 1994, on the ground of irretrievable breakdown; at that time, a parenting plan which called for joint legal custody and primary physical custody to the mother, was agreed upon by the parties and entered as a court order. The case CT Page 12200 was sent back to this court for resolution of the financial issues which continued to divide the parties.
At the hearing, both parties testified, submitted financial affidavits, child support guideline worksheets and written proposed orders. The plaintiff's father and a real estate agent also testified.
The court finds the facts as follows:
The plaintiff husband is 39 years of age and is a practicing attorney in this state. He has a bachelor's degree, law degree and master's degree in law. He specializes in taxation law and is a partner in a law firm. He currently enjoys gross income of about $1,015 per week, plus perquisites. He shows deductions of $435 per week for federal and state income taxes and self employment taxes on his financial affidavit; however, he has not paid these taxes since 1993, and his actual net income is obscured. Moreover, he does not report the value of his perquisites.
The wife is 42 years of age, has bachelor's and master's degrees in social work and is a certified social worker in this state. She works as a clinical social worker in her own practice and also for a psychiatrist. She works a total of eight to ten hours per week, on average, and reports $315 per week gross and $203 per week net. Her fees average $50 per hour for insured patients and $25 per hour for uninsured patients depending on their income.
The wife's financial affidavit suffers from similar infirmities. It includes overstated and unincurred expenses. She also reports a $42 weekly deduction for income taxes, which is doubtful. She also reports no value for her social worker practice.
The parties have accumulated modest assets during their marriage of about 11 1/2 years. This includes their jointly-owned home which has a value of between $150,000 to $160,000 and a mortgage balance of $136,000, leaving an equity ranging from $14,000 to $24,000; the husband's Keough plan valued at $18,486, and his law firm partnership interest of $7,093. They each have automobiles, household items, furniture and furnishings, and bank accounts of modest value. CT Page 12201
Each holds assets as custodian for the benefit of the parties' children; the husband $1,500 in bonds; the wife $13,788 in a bank account. The parties have agreed to continue to hold these assets in a custodial capacity under the Connecticut Uniform Gift to Minors Act, General Statutes §§ 45a-546, et seq.
The family home was purchased in 1989 for $176,500 with a mortgage of $141,000 and gifts from both parents; his, $28,000; hers, $7,000. Her parents also gave her about $8,000 to repay her outstanding student loans. Defendant's attorney holds $1,500 in escrow paid by the plaintiff by court order to engage an expert. These funds were not spent, as the expert was not retained.
Against these assets, they have incurred significant liabilities. The wife, $37,527, of which approximately $22,000 is on account of legal fees; the husband, $67,331, of which about $35,000 (not including interest and penalties) is for unpaid federal and state taxes) and $8,370 is for attorney's fees. This includes the fees of the attorney for the children, who was excused from attendance and participation in this hearing.
The wife had retained and discharged five attorneys prior to her present attorney. Their fees totalled $12,000 (exclusive of her present attorney). Some of these fees were paid from the proceeds of a loan from her mother. Her present attorney of record's retainer was paid via a loan from a friend.
The husband has superior earnings and earning capacity than that of the wife; hence, he has a greater opportunity than she has to acquire capital assets and income in the future. The wife does not make full use of her earning capacity and has made no discernible effort to increase her earnings.
As the husband has demonstrated higher earnings than the wife in the past, I conclude that he has made greater monetary contributions to the family assets during the marriage.
It is significant to note that they each bear responsibility for self-destructive financial behavior. The husband, by not paying his income taxes in a timely fashion, thereby increasing his ultimate liability; the wife, by incurring liability for attorneys' fees, which, when considered together with the sums she has already expended, are out of all proportion to the assets and incomes of the parties and the issues in this case. These sums could have been devoted to far better purposes. CT Page 12202
I also find that the wife has not cooperated with the agreement to sell the family home after the parties separated; the mortgage and tax payments on the house are about $316 per week, and are a drain on the family's finances in the light of their circumstances.
On the evidence and the credibility of the parties, I cannot conclude that either spouse contributed more to the breakdown of the marriage than the other.
I also note that the older child is in school, and the younger will begin to attend school full time in about two years, so the wife will continue to have some day care expense. However, by then, or soon after, she should be able to more fully exploit her earning capacity and be essentially self supporting.
The husband proposes a deviation from the child support guidelines suggested because of the shared custody scenario. The wife proposes, because of income tax benefits, that the guidelines suggested amount not be used, and that she be awarded unallocated alimony and support. The parties submitted sharply disparate computations of the husband's support obligation as proposed by the guidelines. The wife, $267 per week, which was inaccurate; the husband, $173 per week, also inaccurate. The court believes the appropriate guideline amount should be between $210 and $230 per week, depending on the plaintiff's true net income, when his perquisites and appropriate estimated tax deductions are properly factored in.
Nevertheless, the court finds that the parties' shared custodial arrangement justifies a modest departure from the guidelines, and thus it would be inappropriate or inequitable to apply the guidelines mechanically. I find, therefore, that the appropriate child support should be $190 per week.
It also must be noted that the parties have agreed that the husband shall transfer all his right, title and interest in the jointly-owned family home to the wife who shall pay the encumbrances thereon and save him harmless. The court finds this fair, equitable and appropriate, especially since she now resides there with the parties' minor children. This would have the added benefit of allowing the children to remain in a familiar environment and provide some stability to their lives. CT Page 12203
As stated, the mortgage payment and real estate taxes total $316 per week. It is obvious that even with the child support ordered, the wife's present earnings are insufficient to meet all of her household expenses and day care. Therefore, she will require some additional support for a reasonable time after the youngest child is in school full time. By then, she should have developed a busier practice and be generating more income.
The court also must note in this regard that the plaintiff's ability to pay such spousal support is enhanced by his plan to move in with his fiancee and share expenses.
The court has considered all of the criteria in General Statutes §§ 46b-62, 46b-81, 46b-82 and 46b-84, and the taxable implications and consequences of its financial awards, and the following orders shall enter.
(1) The husband shall transfer by quit claim deed all his right, title and interest in and to the jointly-owned premises at 27 Mile Creek Road, Old Lyme, Connecticut, to the wife, subject to all encumbrances thereon which she shall pay and save him harmless therefrom.
(2) The husband shall make the mortgage payment of principal, interest and taxes for December, 1994.
(3) There is assigned and vested in the wife, by Qualified Domestic Relations Order (QDRO), sixty (60%) percent of the husband's Keough plan valued as of November 29, 1994. The other forty (40%) percent shall belong to the husband. The court shall retain jurisdiction over this matter until the transfer has been accepted by the plan administrator.
(4) Each party shall take, have and own the tangible personal property in his or her possession, free of the claims of the other, except as later set out. The wife shall take and have her Subaru motor vehicle; the husband, his Buick motor vehicle.
(5) The husband shall also take and have his grandfather's spurs and binoculars, the foul weather gear, rocking chair and books, now in the wife's possession.
(6) The husband shall take, have and own free of the wife's claims, his bank accounts, his partnership interest in his law CT Page 12204 firm, and his Northeast life insurance policy. He shall also have his USAA life insurance policy subject to the provisions of paragraph 15 below.
(7) The wife shall take, have and own her bank accounts and her social, worker practice, free of the husband's claims.
(8) Each shall continue to hold the children's savings accounts and bonds shown on their financial affidavits as custodians under the Connecticut Uniform Gift to Minors Act, General Statutes §§ 45a-546, et seq.
(9) The husband shall irrevocably designate the minor children as beneficiaries of his $150,000 life insurance policy until each attains the age of 19, or graduates high school, whichever occurs first. When the oldest child reaches 19, or graduates high school, whichever first occurs, the younger child shall be the beneficiary of the entire policy. He shall execute and deliver an authorization to the wife so she may obtain information relating to the standing and status of said policy. The wife shall do likewise with respect to the $50,000 life insurance policy shown on her financial affidavit.
(10) The plaintiff shall maintain the children on his employment-related health insurance so long as the carrier permits, but not beyond age 19 or high school graduation. Each party shall pay one-half of the uncovered health expenses for the child. An order pursuant to General Statutes § 46b-84 (c) shall enter.
(11) The husband shall cooperate with the wife's application to remain covered under said health insurance under COBRA or other applicable law, at her expense.
(12) The $1,500 held by defendant's attorney shall be paid over to the attorney for the minor children. The husband shall be responsible for sixty (60%) percent of her total bill and the wife forty (40%) percent, and each shall be given credit for what each has paid. The $1,500 shall be credited to the husband's share. Payment shall be made within ninety (90) days.
(13) Each shall pay the liabilities shown on Schedule 3 of their respective financial affidavits.
(14) The plaintiff shall pay the sum of $190 per week as CT Page 12205 total child support for the two minor children, commencing December 14, 1994. Said child support shall be secured by contingent wage execution. He shall also be entitled to claim both children as dependency exemptions for tax purposes in 1993 and 1994 and in succeeding years. The wife shall cooperate with these claims. Both parents shall be obligated for the support of their children pursuant to 1994 Public Acts No. 94-61.
(15) Commencing December 14, 1994, the plaintiff shall pay to the defedant [defendant], as periodic alimony, the sum of $120 per week, which shall be deductible by him and taxable income to her, for a period of four (4) years. Said alimony shall not be modifiable as to term or amount and shall terminate upon the death of either party, the wife's remarriage or pursuant to General Statutes § 46b-86 (b). He shall irrevocably designate her as irrevocable beneficiary of his USAA life insurance policy so long as he is obligated to pay alimony hereunder and execute and deliver an authorization to her similar to that described in paragraph 9 above.
(16) The plaintiff shall be entitled to deduct all sums paid by him for mortgage interest and real estate taxes on the family home in the calendar years 1993 and 1994.
(17) No attorney's fees are awarded to either party.
(18) All documents or instruments necessary or incidental to effectuate the orders entered shall be completed and exchanged within thirty (30) days.
Teller, J.